POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IZOGIE OSARO EKE, Individually and on Behalf of All Others Similarly Situated, | Case No. |
| Plaintiff, | <u>CLASS ACTION</u> |
| v. | COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS |
| LUCID GROUP, INC., MARC WINTERHOFF, and TAOUFIQ BOUSSAID, | <u>DEMAND FOR JURY TRIAL</u> |
| Defendants. | |

Plaintiff Izogie Osaro Eke ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Lucid Group, Inc. ("Lucid" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.  Plaintiff

1

believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.    This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired Lucid securities between February 25, 2026 and April 13, 2026, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.    Lucid is a technology company that designs, develops, manufactures, and sells electric vehicles ("EVs"), EV powertrains, and battery systems.  The Company's products include, *inter alia*, the "Lucid Air" sedan and "Lucid Gravity" sport utility vehicle ("SUV").

3.    At all relevant times, Defendants touted purported enhancements to Lucid's manufacturing and delivery capabilities and overall operations.  In particular, beginning in late-February 2026, Defendants represented that, in fiscal year ("FY") 2025, they had implemented sustainable improvements in these areas, including with respect to the production and ramp-up of deliveries of the Lucid Gravity.  Defendants likewise asserted that these improvements would lead to profitable growth and performance efficiencies in FY 2026.  Unbeknownst to investors, however, Lucid's performance was materially hampered by significant supplier and delivery issues in February 2026, putting the Company on track for dismal, rather than improved, performance in its first quarter ("Q1") of 2026.

4.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically,

2

Defendants made false and/or misleading statements and/or failed to disclose that: (i) a supplier quality issue had significantly disrupted deliveries of the Lucid Gravity; (ii) the foregoing was likely to, and did, have a material negative impact on the Company's business and financial results; (iii) accordingly, the Defendants had overstated the purported enhancements to Lucid's manufacturing and delivery capabilities and overall operations; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

5.      The truth began to emerge on April 3, 2026, when Lucid issued a press release "announc[ing its Q1 2026] production and delivery totals[.]" Lucid revealed that it had "produced 5,500 vehicles" during Q1 2026, while only "deliver[ing] 3,093 vehicles." The press release further disclosed that, "[d]uring the quarter, deliveries of the Lucid Gravity were disrupted for 29 days due to a supplier quality issue with the second-row seats" and, "[a]s a result of this, the company's ability to meet customer demand was impacted."

6.      The same day, *Reuters* published an article entitled "Lucid misses first-quarter vehicle delivery estimates on supplier disruptions". The article provided additional color and comments from Defendant Marc Winterhoff ("Winterhoff"), the Company's Interim Chief Executive Officer ("CEO"), regarding Lucid's disappointing Q1 2026 delivery results—most notably that deliveries were particularly impacted ***over a month earlier*** in February 2026, when Lucid paused to reverse an unauthorized supplier change and inspect vehicles already produced.

7.      The next trading day, April 6, 2026, *24/7 Wall St.* published an article entitled "Lucid Faces Biggest Disaster Ever", which described the number of vehicles that Lucid delivered in Q1 2026 as "remarkably small", stating that Lucid "cannot sell fewer than 4,000 vehicles and even pretend this is sustainable."

3

8. Following the foregoing news and disclosures, Lucid's stock price fell $1.13 per share, or 11.35%, over the following two trading sessions, to close at $8.83 per share on April 7, 2026.

9. On April 14, 2026, Lucid filed a current report on Form 8-K with the SEC, reporting, *inter alia*, its preliminary Q1 2026 financial results, including revenue in the range of $280 million to $284 million—well below the consensus estimate of $433.8 million—and losses from operations in the range of $985 million to $1.005 billion.

10. The same day, Lucid issued a press release revealing its plans for a $1.05 billion capital raise, including a $300 million public stock offering.

11. Following these disclosures, Lucid's stock price fell $0.44 per share, or 4.76%, to close at $8.80 per share on April 14, 2026.

12. Then, on May 5, 2026, Lucid issued a press release reporting its Q1 2026 financial results, including GAAP[1] earnings per share ("EPS") of -$3.46, missing consensus estimates by $0.83, a net loss of over $1 billion, and revenue of $282.47 million, missing consensus estimates by $76.04 million. Defendant Winterhoff, as quoted in the press release, acknowledged that the previously disclosed "supplier issue . . . during the quarter had an impact," and the need to "align[] production and delivery with customer demand." Lucid's Chief Financial Officer ("CFO"), Defendant Taoufiq Boussaid ("Boussaid"), as quoted in the same press release, likewise acknowledged that "[w]e ended the quarter with elevated inventory that we expect to convert to revenue and cash as deliveries normalize[.]"

---

[1] "GAAP" refers to generally accepted accounting principles.

4

13. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

14. The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

15. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

16. Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b). Lucid is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

17. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

18. Plaintiff, as set forth in the attached Certification, acquired Lucid securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

19. Defendant Lucid is a Delaware corporation with principal executive offices located at 7373 Gateway Boulevard, Newark, California 94560. The Company's Class A

5

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

common stock trades in an efficient market on the Nasdaq Stock Market ("NASDAQ") under the ticker symbol "LCID".

20.    Defendant Winterhoff has served as Lucid's Interim CEO at all relevant times. During the Class Period, Defendant Winterhoff sold 42,925 shares of the Company's common stock, enriching himself by approximately $440,839.

21.    Defendant Boussaid has served as Lucid's CFO at all relevant times.  During the Class Period, Defendant Boussaid sold 20,051 shares of the Company's common stock, enriching himself by approximately $205,924.

22.    Defendants Winterhoff and Boussaid are collectively referred to herein as the "Individual Defendants".

23.    The Individual Defendants possessed the power and authority to control the contents of Lucid's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of Lucid's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with Lucid, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

24.    Lucid and the Individual Defendants are collectively referred to herein as "Defendants".

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## SUBSTANTIVE ALLEGATIONS

### Background

25.    Lucid is a technology company that designs, develops, manufactures, and sells EVs, EV powertrains, and battery systems.  The Company's products include, *inter alia*, the Lucid Air sedan and Lucid Gravity SUV.

26.    At all relevant times, Defendants touted purported enhancements to Lucid's manufacturing and delivery capabilities and overall operations.  In particular, Defendants represented that, in FY 2025, they had implemented sustainable improvements in these areas, including with respect to the production and ramp-up of deliveries of the Lucid Gravity. Defendants likewise asserted that these improvements would lead to profitable growth and performance efficiencies in FY 2026.  Unbeknownst to investors, however, Lucid's performance was materially hampered by significant supplier and delivery issues in February 2026, putting the Company on track for dismal, rather than improved, Q1 2026 performance.

### Materially False and Misleading Statements

27.    The Class Period begins on February 25, 2026.  On February 24, 2026, during post-market hours, Lucid issued a press release reporting its fourth quarter ("Q4") and FY 2025 financial results.  Therein, the Individual Defendants made various positive statements regarding Lucid's purportedly enhanced production and delivery capabilities and overall operations, touting that, in FY 2025, Defendants had laid the groundwork for long-term, sustainable success in 2026 and beyond.  For example, the press release quoted Defendant Winterhoff as stating, in relevant part[2]:

> ***2025 was all about execution and strategy adjustment to set Lucid up for long-term success.*** Against a challenging macro backdrop, ***we nearly doubled production, gained market share, reduced unit costs, and strengthened our***

---

[2] All emphases herein are added unless otherwise indicated.

*financial position . . . . In 2026, our focus remains on operational and financial discipline, sustainable growth, and continued progress toward profitability[.]*

28.    Likewise, the press release quoted Defendant Boussaid as stating, in relevant part, that "Q4 marked a clear step-change in production and unit economics", and that "*[t]he progress we made is structural, creating a more repeatable and stable operating cadence heading into 2026*[.]"

29.    The same day, also during post-market hours, Lucid hosted a conference call with investors and analysts to discuss its Q4 and FY 2025 results.  During his prepared remarks on the call, Defendant Winterhoff stated, *inter alia*:

> During the year, we improved throughput, reduced rework, built repeatable processes and expanded our manufacturing workforce in a disciplined way to scale flexibly. *We also overcame quality problems that hindered our Gravity ramp in the beginning, [including] related to hardware[.]*
>
> * * *
>
> In Q4, we marked our eighth consecutive quarter of record deliveries, and we continue to take share . . . . Only Lucid and another manufacturer reported a relevant increase in EV deliveries in the United States in the fourth quarter. Our full year deliveries increased 54.7% versus full year '24.
>
> As expected, Lucid Gravity represented the majority of our deliveries in Q4, which was also a key reason for our significant ASP [average selling price] increase for the quarter. I also don't want to miss mentioning that the Lucid Gravity follows Lucid Air's tradition of collecting many awards.

30.    With respect to Lucid's purportedly anticipated performance in 2026, Defendant Winterhoff stated, in relevant part:

> Moving on to our outlook for 2026. *We remain confident in our long-term growth opportunities*, and I'd like to repeat what I said several times before. We're just getting started. *The ramp-up of Gravity gives us ample opportunity to further grow production and deliveries in 2026.*
>
> * * *
>
> Our focus remains on execution. *We are streamlining operations, managing costs and protecting the balance sheet while positioning the company for profitable growth.*

8

31.     During his prepared remarks on the same call, Defendant Boussaid repeatedly emphasized Lucid's purportedly enhanced manufacturing and delivery capabilities, touting the positive impact that such enhancements would purportedly have on the Company's business and financial results and operations going forward, stating, *inter alia*:

> *The fourth quarter was about execution, improving operational stability, improving unit economics and improving liquidity to extend our own way.* We scaled production, delivered strong top line growth, reduced cost per unit and maintain[ed] solid liquidity even in a volatile environment. After working through operational complexity earlier in the year, *Q4 marked a clear step change in throughput consistency, cost trajectory and financial visibility. And importantly, the progress we made is structural, driven by better quality, higher yield, tighter cost control and disciplined capital management*.
>
> * * *
>
> *Operationally, we addressed key throughput constraints in final assembly, increased system commonality and tightened configuration discipline.* First time through improved, rework and scrap declined sequentially and software and process improvements reduced variability.
>
> And in Q4, *we did not experience the same degree of supply chain disruptions as we did earlier in the year, demonstrating the adaptability of our supply chain team*. We exited the quarter with an underlying run rate that supports up to 7,500 vehicles per quarter, supported by higher yield and *improved stability. This is not the result of temporary measures, it reflects a more repeatable operating cadence heading into 2026.*
>
> Q4 deliveries were 5,345 vehicles, up 72% year-over-year, our eighth consecutive record quarter. Full year deliveries were 15,841 vehicles, up 55% year-over-year. *Gravity represented the majority of deliveries in each month in Q4. Operationally, we shifted to a more targeted build-to-stock approach to meet customer expectations for faster delivery of specific trends and configurations.* Days on hand in December were 108, well within the industry range, and *we expect this to trend down in Q1 2026*.

32.     With further respect to the long-term benefits that Lucid's purportedly enhanced manufacturing and delivery capabilities were expected to have on its 2026 financial results, Defendant Boussaid stated, *inter alia*:

> Stepping back, *2025 represented a clear step change in scale and unit economics*. We are on the journey of scaling, *and we are clearly witnessing the benefits* of it through improved fixed cost absorption. *Given our investments in manufacturing*

9

*capacity, we have made significant progress, reflecting our ramp in production this year. Looking ahead to 2026, we expect to realize further meaningful gains.* In addition, we had transitory ramp inefficiencies and incremental tariffs of approximately $10,000 per unit that we do not expect in 2026.

Zooming in on manufacturing efficiency, our manufacturing cost per vehicle produced, including manufacturing and logistics, labor and overhead declined approximately 27% during 2025. These gains are coming from higher line rates, yield improvements and labor efficiency as the team gains experience. *For 2026, we expect continued gains from Q1 2025 baseline, achievable through continued yield gains, production stabilization, labor productivity and logistics optimizations.*

\* \* \*

To close, in 2025, we demonstrated we can scale production, improve unit economics and maintain strong liquidity at the same time. *The progress we made is structural and designed to be repeatable. 2026 is about predictable execution and repeatable process improvements, not temporary actions.*

33.     Also on February 24, 2026, during post-market hours, Lucid filed an annual report on Form 10-K with the SEC, reporting its financial and operating results for its Q4 and FY ended December 31, 2025 (the "2025 10-K").  With respect to the purported quality and reliability of Lucid's supply network, the 2025 10-K stated, in relevant part:

Our vehicle contains thousands of parts and materials from suppliers around the globe. *Lucid's sourcing plans utilize a comprehensive qualification process to assess technical capability, quality*, cost, applicable tariffs, footprint, etc. . . . . *Lucid works closely with suppliers in the upfront development process and in supporting production needs and requirements* while aiming to reduce exposure to tariffs.

\* \* \*

*We have established strong relationships with suppliers and partners to deliver the . . . Lucid Gravity[.]*

34.     Appended as exhibits to the 2025 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002, wherein the Individual Defendants certified that the 2025 10-K "does not contain any untrue statement of a material fact or omit to state a material fact necessary to make the statements made, in light of the circumstances under which such statements were

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

made, not misleading with respect to the period covered by this report;" and that "the financial statements, and other financial information included in this report, fairly present in all material respects the financial condition, results of operations and cash flows of the [Company] as of, and for, the periods presented in this report[.]"

35.    On March 12, 2026, Lucid issued a press release "announc[ing] a comprehensive financial and product strategy designed to scale its business, accelerate its path to profitability and positive free cash flow, and extend its technology leadership into higher volume premium segments of the global automotive market."  The press release touted Lucid's 2026 business prospects, which Defendants had presented on at the Company's investor day that same day, stating, *inter alia*:

> **Lucid emphasized that its strategy is anchored in near-term execution. In 2026, the company is focused on further scaling Lucid Gravity, expanding its global commercial reach**, advancing software offerings and services, accelerating material cost and manufacturing efficiency initiatives, while maintaining strict capital allocation discipline to shorten the path to positive free cash flow.

36.    The same press release quoted Defendant Winterhoff as stating, in relevant part:

> Lucid has already proven its capabilities through technology and product leadership . . . . Today, we're keeping the same Lucid product and technology DNA intact, **while applying increased scale, capital efficiency, and cost discipline, and materially reduced costs, to enable a great business with a clear and credible path to profitability and free cash flow, supported by what we are executing now** and what we are building for the future.

37.    The press release likewise quoted Defendant Boussaid as stating, in relevant part:

> **Lucid's technology leadership is now fully aligned with a business model designed for scale** . . . . **[N]ear-term progress is driven by scaling Gravity**, disciplined capital deployment, and diversified revenue streams that **accelerate our path to sustainable profitability and positive free cash flow**.

38.    The statements referenced in ¶¶ 27-37 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants

11

made false and/or misleading statements and/or failed to disclose that: (i) a supplier quality issue had significantly disrupted deliveries of the Lucid Gravity; (ii) the foregoing was likely to, and did, have a material negative impact on the Company's business and financial results; (iii) accordingly, the Defendants had overstated the purported enhancements to Lucid's manufacturing and delivery capabilities and overall operations; and (iv) as a result, Defendants' public statements were materially false and misleading at all relevant times.

39.     Additionally, throughout the Class Period, Lucid's periodic financial filings were required to disclose the adverse facts and circumstances detailed above under applicable SEC rules and regulations.  Specifically, Item 105 of SEC Regulation S-K, 17 CFR § 229.105 ("Item 105"), required Lucid to "provide under the caption 'Risk Factors' a discussion of the material factors that make an investment in the [Company] or offering speculative or risky" and "[c]oncisely explain how each risk affects the [Company] or the securities being offered." Defendants' failure to disclose, *inter alia*, that a supplier quality issue had significantly disrupted deliveries of the Lucid Gravity violated Item 105 because this issue represented a material factor that made an investment in the Company speculative or risky.

40.     Likewise, Defendants violated Item 303 of SEC Regulation S-K, 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303"), which required Lucid to "[d]escribe any known trends or uncertainties that have had or that are reasonably likely to have a material favorable or unfavorable impact on net sales or revenues or income from continuing operations." Defendants' failure to disclose, *inter alia*, the disruption of deliveries of the Lucid Gravity due to a supplier quality issue likewise violated Item 303 because this disruption represented a known trend or uncertainty that was likely to have a material unfavorable impact on the Company's business and financial results.

12

**The Truth Begins to Emerge**

41.     The truth began to emerge on April 3, 2026, when Lucid issued a press release during post-market hours "announc[ing] production and delivery totals for the quarter ended March 31, 2026." Lucid revealed that it had "produced 5,500 vehicles" during Q1 2026, while only "deliver[ing] 3,093 vehicles." The press release further disclosed, in relevant part:

> During the quarter, deliveries of the Lucid Gravity were disrupted for 29 days due to a supplier quality issue with the second-row seats. As a result of this, the company's ability to meet customer demand was impacted.

42.     Also on April 3, 2026, during post-market hours, *Reuters* published an article entitled "Lucid misses first-quarter vehicle delivery estimates on supplier disruptions", which provided additional color and comments from Defendant Winterhoff on the Company's disappointing Q1 2026 delivery results—most notably that deliveries were particularly impacted *over a month earlier* in February 2026. Specifically, the *Reuters* article reported, in relevant part:

> Lucid . . . missed expectations for first-quarter vehicle deliveries on Friday, hurt by a temporary sales halt and recall tied to an unauthorized supplier change.
>
> Deliveries of its electric luxury SUV Lucid Gravity were disrupted for 29 days during the quarter due to a supplier quality issue with second-row seats, limiting the company's ability to meet customer demand.
>
> The company said it produced 5,500 vehicles and delivered 3,093 in the quarter ended March 31. ***Analysts at Visible Alpha had expected Lucid to produce 5,967 vehicles and deliver 5,237 vehicles.***
>
> ***Deliveries were particularly hit in February, said [Defendant] Winterhoff, when Lucid paused to reverse the change and inspect vehicles already produced***.
>
> Lucid recalled 4,476 Gravity SUVs built between December 2024 and February 2026 earlier this week over seatbelt anchor welds that did not meet safety standards.
>
> ***The shortfall also highlights the persistent gap between the company's production and its ability to get cars into customer hands***, a challenge that has plagued Lucid and other EV startups as demand cools.
>
> ***Supply challenges continue to be a concern, Winterhoff has said, acknowledging that the company was being conservative with its forecast of producing 25,000 to 27,000 vehicles this year***, implying growth could top 50%.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

43.    The next trading day, April 6, 2026, during intraday trading hours, *24/7 Wall St.* published an article entitled "Lucid Faces Biggest Disaster Ever", addressing the "remarkably small" number of vehicles that Lucid delivered in Q1 2026, stating, in relevant part:

> If there is one key metric that shows an EV company can survive, it is unit sales growth . . . . ***Lucid (NASDAQ: LCID) failed that test, as its first-quarter deliveries and production fell well below expectations***. In the US market, where EV sales have weakened (except perhaps for used EVs), its future is not beyond grim.
>
> ***Lucic [sic] delivered a remarkably small number of vehicles in Q1, at 3,903.*** It produced 5,500. ***The company blamed much of this on a supplier's lack of inventory, which cost it 29 days of "disruption."*** It affirms that its production will be 25,000 to 27,000 units this year. ***That is still extremely small.*** Lack of sales has driven Lucid's stock down 56% over the last year, while the S&P 500 is 30% higher.
>
> It is easy to say that Lucid's problems are simply financial, although it loses billions of dollars a year. The figure was a loss of $3.7 billion last year.
>
> Lucid has to show demand for its extremely expensive vehicles. ***It cannot sell fewer than 4,000 vehicles and even pretend this is sustainable.*** It is hard to do the math, but Lucid would need to sell tens of thousands of its cars to break even. Approximately 26,000 is not enough

44.    Following the foregoing news and disclosures, Lucid's stock price fell $1.13 per share, or 11.35%, over the following two trading sessions, to close at $8.83 per share on April 7, 2026.

45.    Then, on April 14, 2026, during pre-market hours, Lucid filed a current report on Form 8-K with the SEC, reporting, *inter alia*, its preliminary Q1 2026 financial results, including revenue in the range of $280 million to $284 million—well below the consensus estimate of $433.8 million—and losses from operations in the range of $985 million to $1.005 billion.

46.    The same day, also during pre-market hours, Lucid issued a press release revealing its plans for a $1.05 billion capital raise, including a $300 million public stock offering.

47.    Following these disclosures, Lucid's stock price fell $0.44 per share, or 4.76%, to close at $8.80 per share on April 14, 2026.

14

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

48.    As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**Post-Class Period Developments**

49.    On April 15, 2026, multinational investment bank TD Cowen issued a report addressing Lucid's delivery disruptions and disappointing results, and reducing its price target ("PT") on the Company's stock to $10.00 from $19.00, stating, *inter alia*:

> Lucid pre-announced Q1 results that seemed to reflect Gravity ramp launch challenges (29-day disruption that's since been resolved) noted in the previous delivery release. While Lucid maintained its 2026 production outlook, the company expects a Q1 operating loss of ~$1bln vs. last year's quarterly ~$0.8bln loss rate. Given the tougher start to the year, the NT is likely to be about execution until the midsize (Cosmos & Earth) launch comes into clearer view. Regardless, we expect the FCF [free cash flow] and liquidity outlooks to be primary focal points as investors gauge risk/reward into the midsize platform launch.

> * * *

> We're updating our model for Q1 deliveries and preliminary financials, as well as takeaways from the recent CMD. We make a number of changes with 2030E revenue going higher but with gross margin lower and FCF outlook mostly intact. Our DCF-based PT goes to $10 from $19 on estimate changes as well as a higher share count reflecting the recent share price decline and slightly higher assumed future equity issuance.

50.    On May 5, 2026, Lucid issued a press release reporting its Q1 2026 financial results, including GAAP EPS of -$3.46, missing consensus estimates by $0.83, a net loss of over $1 billion, and revenue of $282.47 million, missing consensus estimates by $76.04 million. Defendant Winterhoff, as quoted in the press release, acknowledged that the previously disclosed "supplier issue . . . during the quarter had an impact," and the need to "align[] production and delivery with customer demand."  Defendant Boussaid, as quoted in the same press release, likewise acknowledged that "[w]e ended the quarter with elevated inventory that we expect to convert to revenue and cash as deliveries normalize[.]"

15

**SCIENTER ALLEGATIONS**

51.     During the Class Period, Defendants had both the motive and opportunity to commit fraud.  For example, during the Class Period, while disseminating the materially false and misleading statements alleged herein to maintain artificially inflated prices for Lucid's securities, the Individual Defendants reaped hundreds of thousands of dollars in profits by selling tens of thousands of shares of the Company's stock at artificially inflated prices.  In particular, during the Class Period, Defendant Winterhoff sold 42,925 shares of the Company's common stock, enriching himself by approximately $440,839, whereas Defendant Boussaid sold 20,051 shares of the Company's common stock, enriching himself by approximately $205,924.

52.     Defendants also had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time.  The Lucid Gravity is one of the Company's core EV product offerings.  As such, Defendants were undoubtedly highly focused on the production, sale, and delivery of this product at all relevant times.  Indeed, this was clearly exhibited by Defendants' repeated and highly specific statements regarding the Lucid Gravity and purported enhancements they made to ramp up production and delivery of the same, as detailed *supra*, in the Company's Q4 and FY 2025 earnings call, 2025 10-K, and press releases during the Class Period.  Critically, as was belatedly revealed to the market over a month later, the supplier quality issue with the Lucid Gravity's second-row seats had particularly impacted deliveries in ***February 2026***, and Defendants' false and misleading statements alleged herein began in ***late-February 2026***.  As such, Defendants were presumably aware of this issue at the time that they disseminated the materially false and misleading statements alleged herein.  Accordingly, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

53.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Lucid securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

54.    The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Lucid securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Lucid or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

55.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

56.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

17

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

57.   Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Lucid;

- whether the Individual Defendants caused Lucid to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Lucid securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

58.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

59.   Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Lucid securities are traded in an efficient market;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Lucid securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

60.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

61.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)**

62.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

63.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

64.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state

19

material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Lucid securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Lucid securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

65.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Lucid securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Lucid's finances and business prospects.

66.    By virtue of their positions at Lucid, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant

20

knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

67.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of Lucid, the Individual Defendants had knowledge of the details of Lucid's internal affairs.

68.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Lucid. As officers and/or directors of a publicly held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Lucid's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Lucid securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning Lucid's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Lucid securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

69.    During the Class Period, Lucid securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Lucid securities at prices artificially inflated by Defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise

acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Lucid securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Lucid securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

70.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

71.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

**(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

72.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

73.    During the Class Period, the Individual Defendants participated in the operation and management of Lucid, and conducted and participated, directly and indirectly, in the conduct of Lucid's business affairs.  Because of their senior positions, they knew the adverse non-public information about Lucid's false statements regarding the Lucid Gravity and the Company's manufacturing and delivery capabilities and overall operations.

74.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to Lucid's

22

financial condition and results of operations, and to correct promptly any public statements issued by Lucid which had become materially false or misleading.

75.     Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Lucid disseminated in the marketplace during the Class Period concerning Lucid's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause Lucid to engage in the wrongful acts complained of herein.  The Individual Defendants, therefore, were "controlling persons" of Lucid within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Lucid securities.

76.     Each of the Individual Defendants, therefore, acted as a controlling person of Lucid.  By reason of their senior management positions and/or being directors of Lucid, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Lucid to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of Lucid and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

77.     By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Lucid.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

B.      Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated:  May 29, 2026                          Respectfully submitted,

                                              POMERANTZ LLP

                                              */s/ Jennifer Pafiti*
                                              Jennifer Pafiti (SBN 282790)
                                              1100 Glendon Avenue, 15th Floor
                                              Los Angeles, California 90024
                                              Telephone: (310) 405-7190
                                              jpafiti@pomlaw.com

                                              POMERANTZ LLP
                                              Jeremy A. Lieberman
                                              (*pro hac vice* application forthcoming)
                                              J. Alexander Hood II
                                              (*pro hac vice* application forthcoming)
                                              600 Third Avenue, 20th Floor
                                              New York, New York 10016
                                              Telephone: (212) 661-1100
                                              Facsimile: (917) 463-1044
                                              jalieberman@pomlaw.com
                                              ahood@pomlaw.com

                                              *Attorneys for Plaintiff*

24

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS